No. 19,631.

ADDRESSOGRAPH-MULTIGRAPH CORPORATION *v.*
WILLIAM E. KELLEY, ET AL.
(362 P. [2d] 184)

Decided May 22, 1961.

Messrs. AKOLT, TURNQUIST, SHEPHERD & DICK, Mr. LAEL
S. DEMUTH, Mr. LUIS D. ROVIRA, for plaintiff in error.

Mr. ROY H. MCVICKER, JR., for defendants in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

THE parties will be referred to by name, or as they
appeared in the trial court where plaintiff in error was
plaintiff and defendants in error were defendants.

The action was brought by plaintiff to enjoin defendants from engaging in business activities in competition with the corporation in violation of the terms of a contract alleged to have been entered into between plaintiff and defendants. The trial court conducted a hearing on plaintiff's application for a temporary injunction and at the conclusion thereof denied the same. As provided by Rule 111 (3), R.C.P. Colo., under which an order denying a temporary injunction may be reviewed on writ of error, plaintiff seeks reversal.

Each of the defendants was formerly employed by the plaintiff as a salesman. Altenbern became such employee on June 1, 1956, and continued as such until May 31, 1960. Kelley was an employee of plaintiff from 1937 until about June 8, 1960. Both Kelley and Altenbern signed a written contract with plaintiff, the provision pertinent to the issue for determination here reads as follows:

"K. Inasmuch as Salesman through his connection with Company will obtain confidential information regarding Company's methods of doing business, records, and the names and requirements of users of Company's equipment throughout Company's territory, which it would be improper to use to Company's detriment, or in competition with Company, therefor, in part consideration for this agreement Salesman expressly hereby agrees and covenants that for a period of one year from and after the termination of this Contract by either party he will not, without the written consent of Company, engage, directly or indirectly, for himself or as the agent or employee of another in the manufacture, selling, buying, dealing or servicing of addressing, duplicating, lithographing, folding, typesetting, embossing machines, supplies or parts within 100 miles of the Branch Office city above named, or if Salesman at the time of termination hereof was employed at a Sub-Office city, then within 100 miles of said Sub-Office city."

The city of Denver was identified by the contract as

the Sub-Office city covered by the above-quoted provision.

June 1, 1960, the defendants formed a partnership under the firm name of "Addressing Machines and Business Equipment Company," and commenced operations in the Denver area. Admittedly, they engaged in the business of buying, reconditioning and selling addressograph equipment. In many respects their business was in competition with the plaintiff, involving as it did the repair of addressograph machines, the selling of supplies and parts and the servicing of equipment manufactured and distributed by plaintiff. They did not traffic in new machines. All of their business was in connection with used equipment.

Defendants admitted that they had contacts, on behalf of the partnership, with customers of plaintiff with whom they formerly did business as employees of plaintiff. They admitted that some sales to these customers had been made by the partnership.

■ There can be no doubt concerning the fact that when defendants left the employment of plaintiff and began their partnership business, they had the advantage of much information concerning the needs of customers of plaintiff and prospective purchasers, which they had acquired in connection with their employment by plaintiff. The provision above quoted from the contract of employment was intended to protect the plaintiff from the damages which would result from the kind of activity in which defendants engaged upon termination of their employment. The quoted provisions of the contract are reasonable, and the plaintiff was unquestionably entitled to the injunctive relief sought.

From the opinion of this court in *Barrows v. McMurtry Co.*, 54 Colo. 432, 131 Pac. 430, we quote the following:

"It may not be amiss to here suggest that there can be no sound and wholesome public policy, which operates in the slightest degree to lend approval to the open

disregard and violation of personal contracts entered into in good faith, upon good consideration. It is quite as important, as a matter of public interest and welfare, that individuals be not allowed, with impunity, to transgress their solemn undertakings, advisedly entered upon, as it is that the public have protection in other respects. Where one is so lost to a sense of moral obligation as to accept a full consideration for his stock in trade and good-will, upon express condition that he refrain from again entering that business for a limited time, within a certain territory, and then immediately, having pocketed the fruits of the agreement, deliberately and wilfully ignores the controlling condition thereof, courts should certainly not hunt for legal excuse to uphold him in such moral delinquency. On the contrary, in the interests of the general public, and to discourage bad faith conduct of that sort, wherever, without violation of legal principles and public policy, it may be done, contracts like the one under discussion should be rigidly upheld and enforced."

While the language used in the above case had reference to a purchase agreement, it was nevertheless approved and applied to an employment contract in the later case of *Whittenberg v. Williams,* 110 Colo. 418, 135 P. (2d) 228. See also *Mabray v. Williams,* 132 Colo. 523, 291 P. (2d) 677.

The judgment of the trial court is reversed and the cause remanded with instructions to grant the temporary injunction.

MR. CHIEF JUSTICE HALL and MR. JUSTICE McWILLIAMS concur.