No. 21544.

CONTRACT MAINTENANCE CO., A COLORADO CORPORATION *v.* LOCAL NO. 105, BUILDING SERVICE EMPLOYEES INTERNATIONAL UNION, AND LOCAL NO. 9, SHEET METAL WORKERS UNION, AND THE CENTRAL BANK AND TRUST COMPANY, A COLORADO CORPORATION.

(415 P.2d 855)

Decided June 27, 1966.

192

FRICKEY & MORRISSEY, for plaintiff in error.

PHILIP HORNBEIN, JR., for defendant in error Local No. 105.

CHARLES A. GRAHAM, for defendant in error Local No. 9.

GELT & GROSSMAN, for defendant in error The Central Bank and Trust Co.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

CONTRACT MAINTENANCE COMPANY is a Colorado corporation which renders, under contract, janitorial service to those who are desirous of its service and it will hereinafter be referred to as Maintenance. Maintenance filed a complaint wherein the following entities were named as parties defendant: (1) Local No. 105, a Building Service Employees International Union which will hereinafter be referred to as No. 105; (2) Local No. 9, a Sheet Metal Workers Union which will hereinafter be

referred to as No. 9; and (3) the Central Bank & Trust Company, a Colorado corporation which will hereinafter be referred to as Central.

The gist of the complaint was that the three defendants had so conspired as to cause the one defendant, Central, to terminate its contract calling for the rendition of janitorial service by Maintenance to Central. More specifically, it was alleged in the complaint that Maintenance was under a contract of employment with Central whereby it rendered full and complete janitorial service to Central and that the three defendants joined in an "unlawful, malicious and secretive conspiracy" to interfere with the aforementioned contract. No. 105 was claimed to have threatened to picket Central unless the latter required Maintenance "to hire unwanted employees," and furthermore it was said that No. 105 did in fact so picket. No. 9 was said to have threatened to withdraw its funds then on deposit in Central, and further threatened to invoke other "economic pressures" against Central, unless Central ceased doing business with Maintenance. As a result of this conspiracy it was alleged that Central did in fact cease doing business with Maintenance and to that end had declared the contract between them "terminated." To redress this alleged wrong Maintenance asked for the somewhat modest sum of $5,680 as actual damage, and further sought the not-so-modest sum of $250,000 as exemplary damages.

By way of a response to this complaint Central filed a motion for summary judgment, incorporating therein by reference a copy of its contract with Maintenance. This contract contained a so-called "cancellation clause" which provided that "either party [i.e., Maintenance or Central] shall have the right to cancel said contract upon thirty (30) days written notice to the other party of such cancellation." Central also attached to its motion for summary judgment a copy of its thirty day notice of cancellation which it had theretofore sent Maintenance. Maintenance filed nothing in opposition

to Central's motion for summary judgment and apparently does not deny the existence of the aforementioned contract between itself and Central, nor does it contest the validity of Central's notice to terminate.

No. 105 and No. 9 each filed a motion to dismiss, averring that the complaint failed to state facts upon which relief could be granted and also that the district court lacked jurisdiction of the subject matter for the reason that the National Labor Relations Board was vested with exclusive jurisdiction to determine the issues sought to be raised by the complaint.

Upon hearing, Central's motion for summary judgment was granted and judgment was duly entered in favor of Central. The motions to dismiss filed by both No. 105 and No. 9 were also granted, and judgment of dismissal followed. By the present writ of error Maintenance now seeks reversal of these judgments.

■ We shall first consider the propriety of the trial court's granting of Central's motion for summary judgment. It is Central's position that under its contract with Maintenance it had the absolute right to terminate the contract upon thirty days notice of its intention to so terminate. Central argues that, having given Maintenance the proper notice of termination, it can in nowise incur any liability to Maintenance for merely exercising its contractual right to terminate the contract. With this general contention we are in accord.

It should be noted, at the outset, that this is not a breach of contract action. On the contrary, it would appear that all Central has done is terminate its contract with Maintenance in the precise manner provided for in the contract itself. This right to cancel upon proper notice, incidentally, was a right also enjoyed by Maintenance, as well as Central.

■■ The gist of a civil action of conspiracy is not the conspiracy, as such, but the damages resulting from it. Furthermore, an action for conspiracy cannot be successfully maintained unless the purpose to be effected

is unlawful or a lawful purpose is accomplished by an unlawful means. See, for example, *Pullen v. Headberg,* 53 Colo. 502, 127 Pac. 954, and *Whitaker v. Hearnsberger,* 123 Colo. 545, 233 P.2d 389. Application of this general rule leads to the conclusion that Central can not be held liable for merely doing in a proper manner that which it had a lawful right to do, *i.e.,* terminate its contract with Maintenance upon thirty days notice.

 In its brief Maintenance suggests that there really were genuine issues of material fact, which — if true — ' would dictate a denial of Central's motion for summary judgment. In this regard, however, it is sufficient to observe that the record before us does *not* reveal any such genuine issues of material fact.

 Finally, in holding that the trial court committed no error in granting Central's motion for summary judgment, we are not unmindful of *Watson v. Settlemeyer,* 150 Colo. 326, 372 P.2d 453. In that case we held that though a principal may have had the right to terminate his distributor's contract at will, this fact does not relieve one of liability who has intentionally and unjustifiably interfered with such a contract, even though terminable at will, and has induced and caused its termination. As applied to the instant case, this merely means that though Central had the right to terminate its contract, such would not relieve No. 105 and No. 9 from liability if it be otherwise established that they had intentionally and unjustifiably induced Central to terminate its contract with Maintenance.

 We shall next proceed to consider the propriety of the action of the trial court in granting the motions to dismiss filed by No. 105 and No. 9. The record before us contains nothing which would indicate the ground for the granting of these motions. If they were granted on the ground that the complaint failed to state sufficient facts to entitle the pleader to any relief, some difficulty might conceivably be encountered in sustaining the dismissals. At the very least, we would want

the matter more fully considered and briefed, especially in the light of *Watson v. Settlemeyer, supra.* And, of course, any action of the trial court in granting a motion to dismiss for failure to state a claim and simultaneously therewith entering a judgment of dismissal is contrary to our holding in *Sprott v. Roberts,* 154 Colo. 252, 390 P.2d 465. Be all this as it may, we are nonetheless convinced that the granting of these motions to dismiss was proper for the alternative reason advanced by No. 105 and No. 9, namely, that the National Labor Relations Board had exclusive jurisdiction of this matter. And there is no suggestion that this was a matter which could in anywise be cured by any amendment to this complaint.

█ █ It is quite evident from a study of the complaint that, insofar as No. 105 and No. 9 are concerned, Maintenance complains about certain conduct on the part of No. 105 and No. 9, *i.e.,* the picketing and the invoking of certain economic sanctions, which conduct — if true — would appear to constitute an unfair labor practice. Maintenance is apparently non-union, and No. 105 and No. 9 allegedly brought pressure to bear on Central to cease doing business with Maintenance. Under these circumstances the doctrine of federal preemption comes into play, a doctrine which has applicability in actions for damages, as well as actions for injunctive relief. See, for example, *San Diego Trades Council v. Garmon,* 359 U.S. 236, 79 S. Ct. 773, 3 L. Ed.2d 775, and *Local 100 v. Borden,* 373 U.S. 690, 83 S. Ct. 1423, 10 L. Ed.2d 638. The gravamen of Maintenance's complaint lying *arguably* within the jurisdiction of the National Labor Relations Board, the complaint is for that reason subject to a motion to dismiss. See *Bussey v. Plumbers Local No. 3,* 159 Colo. 479, 412 P.2d 907. On this ground, then, the trial court committed no error in granting the motions to dismiss filed by No. 105 and No. 9. Finally, it should perhaps be noted that Maintenance in its brief on file in this court does not in any manner meet or

otherwise resist this contention that the trial court was without jurisdiction to hear the matter which it sought to raise as to these defendants.

Judgment affirmed.

MR. JUSTICE MOORE not participating.