No. 22825.

KNOEBEL MERCANTILE COMPANY, A COLORADO
CORPORATION *v.* FRANCIS L. SIDERS.
(439 P.2d 355)

Decided April 8, 1968.    Rehearing denied April 29, 1968.

394

FULLER AND EVANS, MACKINTOSH BROWN, DWIGHT A. HAMILTON, for plaintiffs in error.

KNOWLES, HOPPER AND MOLEN, for defendant in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE MOORE.

PLAINTIFF in error will be referred to as Knoebel, and defendant in error as Siders.

Knoebel brought the action against Siders, a former employee, seeking to restrain him from working as a salesman for one of its competitors. The injunctive relief sought against Siders was based on a restrictive covenant contained in a written contract of employment entered into between him and Knoebel under date of June 1, 1964. Pertinent portions of the contract are as follows:

"NOW, THEREFORE, in consideration of Employer's hiring Employee and for other good and valuable consideration, Employee promises and agrees that in the event of the termination of his said employment for

any reason whatsoever, for a period of two years from and after the date of such termination he will not, directly or indirectly, either as an owner, officer, employee, agent or otherwise, engage in the institutional food, paper and supply business, bakery supply business, and janitorial supply business, or any part thereof in all or any part of the State of Colorado, Wyoming, Montana, New Mexico, Nebraska, Kansas, So. Dakota, and any other State in which Employer transacts its business at any time up to the date of such employment termination. Employee further promises and agrees that during said two-year period he will not divulge to anyone other than Employer or its officers or authorized employees or agents any of the trade secrets, methods, systems, customer or credit lists, volumes, preferences, purchasing lists and practices, standards and sources, selling and shipping practices and other methods, system records and statistics hereafter disclosed to Employee, reposed in his confidence by Employer or otherwise acquired by Employee in the course of his employment. Failure to perform these promises by the Employee shall give the Employer the right to an injunction to restrain the Employee from further violation, as well as damages, * * *"

Prior to the date of the contract Siders resided in Wyoming and was working as a salesman for a candy and tobacco distributing business. After some preliminary negotiations he was advised on May 14, 1964, that his application for employment was accepted by Knoebel and he reported for work on June 1, 1964. While completing and signing documents relating to insurance, social security, withholding tax and similar matters he was presented for the first time with the restrictive agreement above quoted. He read and then signed the agreement. He was given the customary training course for salesmen, after which Knoebel assigned him to a territory consisting of Colorado Springs, Colorado, and a limited adjacent area in which about 150 customers

were located. He was furnished with a price list, prospect cards, some information as to the credit ratings of the customers, their buying habits and other general information. He was also furnished with a car, order books, and other things useful to him as a salesman.

Siders terminated his employment with Knoebel on September 9, 1966, and went to work for John Sexton & Co., a competitor of Knoebel, as a salesman. Though Sexton was in competition with Knoebel there was a considerable difference in the scope of operations in the business of the two companies since it appears from the evidence that Knoebel dealt in 10,000 items of merchandise, all manufactured by others, and Sexton dealt in only 1600 items many of which it manufactured.

The record discloses that although Siders was employed as a salesman, he was assigned to a small territory with only 150 customers, whereas if the restrictive covenant is enforced by injunction as prayed by Knoebel he will be prohibited from operating in all of Colorado, Wyoming, Montana, New Mexico, Nebraska, Kansas, South Dakota, and any other State in which Knoebel was transacting business on the date of termination of his employment. Trial was to the court which found for the defendant, and Knoebel seeks reversal of the judgment, dismissing the action.

■ The undisputed evidence was that Siders intended to and would, unless enjoined therefrom, solicit on behalf of John Sexton & Co. some of the customers he previously solicited on behalf of Knoebel, and the court so found. Lengthy Findings of Fact entered by the trial court included the following:

"(9) Familiarity between salesman and customer is not of primary importance. Almost all customers buy from several competitors on a continuing basis. Sales in the institutional food industry are based primarily upon product and price with time of delivery being a secondary factor. Defendant Siders is not in a position to control the business of the prior customers as a

personal asset. Sales volume may either decrease or increase when the salesman in a territory is changed.

"(10) Siders' services for Plaintiff Knoebel were not unique in character and his place with Plaintiff Knoebel's organization has already been filled.

"(11) The restrictive agreement was designed to restrict Defendant Siders from doing two things. First, it prohibited the disclosure of trade secrets and confidential information acquired by Defendant Siders in the course of his employment. Second, it prohibited Defendant Siders from competing with Plaintiff Knoebel.

"(12) During the course of Defendant Siders' employment by Plaintiff Knoebel, he acquired general information regarding Plaintiff Knoebel's business. The information which Plaintiff Knoebel considered to be secret and confidential is available to Plaintiff Knoebel's competitors and is not confidential and does not involve trade secrets for the reasons as follows:

"(a) Credit information concerning customers is not only available to competitors through commercial sources but it is usually exchanged between competitors.

"(b) The supplier or packager of an item sold under a private label can be determined by a competitor by investigation of markings on a can. Further, in some instances an item is supplied only by a few known suppliers and the suppliers actively solicit businesses.

"(c) The quality of merchandise marketed under a private label is not secret or confidential because anyone can take a sample and obtain an analysis.

"(d) Specific products which a customer might buy can be determined in most instances by looking around a customer's storeroom to which most customers give free access to institutional food salesmen. In addition, a customer's menu discloses his needs.

"(e) The 'purchase planner' devised by Plaintiff Knoebel is not confidential because it is given to cus tomers and at least on one occasion Mr. Knoebel distrib-

uted copies to Plaintiff Knoebel's competition at an institutional food convention.

"(f) The price book might contain certain cost information not readily available to competition but the pages in such book are constantly being substituted and the book becomes obsolete within a short time. Further, the human mind could not possibly retain the mass of information contained in the price book which is from six to eight inches thick.

"(g) Customer lists are not secret or confidential because in almost all instances Knoebel's customers are also being called upon by competitors.

"(13) The Court must distinguish between the restrictive agreement between Plaintiff Knoebel and Defendant Siders and the Westman Commission Company plan introduced into evidence. Under the Westman plan, an employee who decided to compete with Westman would be deprived of only that part of the fund contributed by the employer. In Plaintiff Knoebel's agreement there is an attempt to curtail competition.

"(14) A permanent injunction would result in Defendant Siders having to either move from the region in which he has spent most of his adult life or abandon the type of work in which he has most experience.

"(15) The injury to Defendant Siders by enforcement of the agreement outweighs the benefit to Plaintiff Knoebel.

"(16) There is no proof of threatened or actual irreparable damage to Plaintiff Knoebel."

The full record has been read and we find ample evidence to sustain the fact findings of the trial court. We shall not disturb those findings.

It is argued by counsel for Knoebel that the trial court erred as a matter of law in denying Knoebel's claim for injunction and, alternatively, if the restriction was unreasonable as to time and area this court should "reform" the restriction with regard thereto.

The test as to whether a covenant of this kind

will be enforced by injunction hinges on a determination of the reasonableness of the restriction under all the facts and circumstances of each case. *Addressograph Corporation v. Kelley*, 146 Colo. 550, 362 P.2d 184. If it is unfair and unreasonable in a given set of circumstances, relief by injunction will be denied. The restrictions in contracts not to engage in business in competition with another, to be valid, must be reasonable, must not impose undue hardship, must be no wider than necessary to afford the required protection, and each case must stand on its own facts. *Whittenberg v. Williams*, 110 Colo. 418, 135 P.2d 228. In the instant case the trial court, after a lengthy and searching inquiry, determined that the restriction here involved was unreasonable under all the pertinent circumstances. We cannot say that the court erred as a matter of law in reaching this conclusion. In *Goldammer v. Fay*, 326 F. 2d 268, the court held as follows:

"From the record it appears that an injunction would not be of any benefit to the Goldammers [the employers] and would result in serious detriment to the Fays [the employees]. We agree with the trial court that the evidence is not sufficient to establish that the Goldammers suffered any substantial injury from the Fay restaurant entitling them to damages, or that they would benefit from an injunction, the enforcement of which would be unjust and inequitable."

This language is applicable to the facts in the instant action.

The judgment is affirmed.

Mr. Justice Day and Mr. Justice Kelley concur.