ANCHOR ALLOYS, INC., Plaintiff, *v.* NON-FERROUS PROCESSING CORPORATION et al., Defendants.

Second Department, October 24, 1972.

*Rosoff & Rosoff* (*Morris Rosoff* and *Robert A. Katz* of counsel), for plaintiff.

*Kaufman & Serota* (*Irving Serota* of counsel), for defendants.

MARTUSCELLO, J. This is an action for a declaratory judgment upon a submission of agreed facts pursuant to CPLR 3222 to determine whether the defendants, either collectively or individually, are to be held liable for unfair competition, breach of fiduciary duty and other violations of the plaintiff's rights.

Defendant Non-Ferrous Processing Corporation (hereinafter called "Non-Ferrous") is a New York corporation, formed on June 5, 1968. The plaintiff manufactures and sells various metals for use in various industries and is also engaged in the melting, smelting, purifying, alloying and fabricating of basic metals. Non-Ferrous is also engaged in the melting and smelting of metal and the sale of the recycled metal. Half of Non-Ferrous' melting and smelting work is done with customers who also patronize the plaintiff.

Defendant Kaufman has been in the metals business for more than 35 years. In June, 1962 he was president and sole stockholder of Roosevelt Metal Co. Inc., a New York corporation. On April 27, 1962 Roosevelt Metal agreed to sell the plaintiff its goodwill, fixtures, machinery, equipment and personal property. The agreement also restricted the seller from re-establishing, reopening or engaging in any business similar to the one sold within New York City for a term of five years from the date of closing. The sale was closed on June 29, 1962. Simultaneously therewith, Kaufman entered into an employment contract with the plaintiff. That agreement provided in pertinent part that if the "agreement, or the employment hereunder, shall terminate subsequent to July 1, 1965," Kaufman would not "prior to July 1, 1967, directly or indirectly, sell metals to any person or firm who or which purchased metals from ROOSEVELT METAL CO. INC. during the period of five (5) years immediately preceding July 1, 1965." Kaufman was employed by the plaintiff from July, 1962 through March 22, 1968. Since July, 1968 Kaufman has been, and he presently is, an employee, officer and stockholder of Non-Ferrous.

Defendants Worth, Orol and Princenthal were partners, doing business as Rutgers Metal Co., for approximately 25 years. On April 26, 1968 Worth entered into a contract for the purchase of premises at 551 Stewart Avenue, in Brooklyn, New York. The contract was entered into by Worth in his individual name,

but was for the stated benefit of himself, Orol and Princenthal. In late April, 1968, but prior to entering into this contract, Worth, Orol and Princenthal had negotiations with Kaufman concerning the opening of a business engaged in the chopping of copper and the melting and smelting of metals. On or about April 28, 1968, these four individual defendants again met and agreed to form a corporation engaged in copper chopping and the melting and smelting of metals, to be located at 551 Stewart Avenue, in Brooklyn.

On or about June 21, 1968, Worth assigned his interest in the contract of sale to the Stewart Avenue property to Non-Ferrous and Non-Ferrous then closed the contract and took title to the premises. Although the agreed statement of facts makes no reference to any other relationship between defendants Worth, Orol, Princenthal and Non-Ferrous, the plaintiff claims in its brief, and it may be inferred from the record, that Worth, Orol and Princenthal are officers and stockholders in Non-Ferrous. The first work contracted for repairs on these premises was on June 28, 1968. Non-Ferrous made its first item of purchase on November 27, 1968 and its first item of sale on December 18, 1968.

Defendant Baim was employed by Roosevelt Metal prior to June, 1962 as a plant manager. From June, 1962 through the first week of October, 1968 he was employed by the plaintiff in a similar capacity. From mid-October through November, 1968, Baim was employed by Rutgers Metal Co. Thereafter he joined Non-Ferrous as plant manager and remained there as such until August 27, 1970. From November, 1968 through January, 1969 Non-Ferrous hired three former employees of the plaintiff. All three were manual laborers and constituted 10% of the plaintiff's labor force.

Lee Salmon, doing business as Columbia Smelting Company, had a license agreement with Roosevelt Metal. That agreement passed to the plaintiff and consequently the plaintiff used the name of Columbia Smelting. During September, 1968 Kaufman advised Salmon that he was re-entering business in the non-ferrous metal field. On October 7, 1968 Salmon exercised his reserved right to terminate his license agreement with the plaintiff. In November, 1968 Kaufman and Salmon began negotiations concerning work to be done by Non-Ferrous for Salmon. In the latter part of December, 1968 Non-Ferrous circulated an introductory letter to the trade, which included some of the plaintiff's accounts.

The plaintiff contends that the totality of conduct herein indicates that the defendants either collectively or individually are

culpable of unfair competition in that (a) they raided 10% of its labor force and appropriated the plaintiff's plant foreman, defendant Baim; (b) they caused the plaintiff to lose a valuable license agreement whose benefits then accrued to defendant Non-Ferrous and (c) defendant Kaufman recovered the customers which he had previously sold and transferred to the plaintiff when, in June, 1962, as the sole officer and stockholder of Roosevelt Metal, he sold and transferred the total assets of that corporation to the plaintiff. The defendants contend that they were allowed to enter a new business venture after the expiration of a restrictive period, with the help of the defendant Kaufman, who is a man of experience and recognized in his field, and that their acts were lawful and consistent with reasonable business practice.

It has been held that in the absence of an express contract, or a breach of a fiduciary duty, or fraud, an employee who has left his employment will not be restrained from competing with his former employer (*Clark Paper & Mfg. Co.* v. *Stenacher,* 236 N. Y. 312). The express contract of sale between Roosevelt Metal and the plaintiff and defendant Kaufman's employment contract with the plaintiff allowed the seller and Kaufman to enter into competition with the plaintiff after the two respective restrictive periods in the two contracts had terminated, i.e., on June 29, 1967 and July 1, 1967. The clear import of Kaufman's employment contract was that he could and would re-enter the field of which he had knowledge and experience after July 1, 1967, the date the restrictive period terminated. Kaufman had 35 years of experience in the metal field. He brought his knowledge of prices and costs to the plaintiff and used it during the course of his employment there. This knowledge does not constitute a trade secret (*Richard M. Krause, Inc.* v. *Gardner,* 99 N. Y. S. 2d 592). Similarly, the melting and smelting of metals, the sales thereof, and the specifications for the same are open knowledge in the trade. Kaufman brought this knowledge with him to the plaintiff and any restraint on his subsequent use thereof, after his restrictive period terminated, is not "reasonably necessary" to the plaintiff employer's protection (*Kaumagraph Co.* v. *Stampagraph Co.,* 197 App. Div. 66, 76, affd. 235 N. Y. 1).

It has also been held that a former employee, without the use of a list belonging to his former employer, may solicit the latter's customers and that remembered information as to specific needs and business habits of particular customers is not confidential (*Peerless Pattern Co.* v. *Pictorial Review Co.,* 147

App. Div. 715; *American Window Cleaning Co. of Springfield v. Cohen,* 343 Mass. 195). The agreed upon facts herein indicate that any solicitation of the plaintiff's customers took place after Kaufman's restrictive period terminated and after Kaufman left the plaintiff's employ. Moreover, the solicitation was a general one of the trade, and there is nothing in the record to indicate that the customers who were approached were not readily ascertainable to anyone in the trade. Under these circumstances the defendants had the right to solicit the plaintiff's customers *(Public Relations Aids v. Wagner,* 37 A D 2d 293). Salmon too was a customer of the plaintiff, whose license arrangement was terminable at any time.

There is nothing in the record herein to indicate that defendant Baim and the three manual laborers left the plaintiff and joined defendant Non-Ferrous for any reason other than that the offered employment seemed more lucrative. In any event, it is conceded that no unethical methods were used in obtaining the services of these employees. The mere inducement of an employee at will to move to a competitor will not give rise to liability unless the purpose was solely to produce damage or unless the means employed were dishonest or unfair *(Coleman & Morris v. Pisciotta,* 279 App. Div. 656). No such purpose or means has been alleged. Under the agreed facts and applicable law, judgment should be granted in favor of the defendants, with costs, declaring that they are not liable to the plaintiff.

HOPKINS, Acting P. J., MUNDER, CHRIST and BENJAMIN, JJ., concur.

In this action for a declaratory judgment upon a submission of agreed facts pursuant to CPLR 3222, judgment is granted in favor of defendants, with costs, declaring that they are not liable to the plaintiff.