Anthony MULEI, Plaintiff-Appellee,

v.

JET COURIER SERVICE, INC., an Ohio corporation, Defendant-Appellant and Third-Party Plaintiff-Appellant,

v.

AMERICAN CHECK TRANSPORT, INC., Third-Party Defendant-Appellee.

No. 85CA0595.

Colorado Court of Appeals, Div. II.

March 26, 1987.

Rehearing Denied April 16, 1987.

Certiorari Granted (Jet) July 13, 1987.

Fanganello & Hopf, P.C., Joseph M. Fanganello, Denver, for plaintiff-appellee.

McMichael & Benedict, Mitchell Benedict III, Keller, Dunievitz, Johnson & Wahlberg, Lionel Dunievitz, Denver, for Jet Courier Service, Inc.

Donald E. Cordova, P.C., Donald E. Cordova, John S.L. Sackett, Denver, for third-party defendant-appellee.

BABCOCK, Judge.

Defendant, Jet Courier Service, Inc. (Jet), appeals the judgment in favor of plaintiff,

Anthony Mulei, and the dismissal of its counterclaims and third-party claim. We affirm.

Jet is in the air courier business, transporting between cities small freight and time-sensitive documents such as checks for banks. Mulei was hired by Jet in February 1981 to manage Jet's Western Zone operations from its Denver office. Mulei had 10 years' experience operating air courier companies and was working for one of Jet's competitors when he was hired. Mulei had gained extensive knowledge of the air courier business and had developed relationships with Denver banks and other customers. He brought many of his former employees and customers with him to Jet.

Pursuant to an oral agreement, Mulei was to receive a yearly salary plus a bonus equal to 10% of the Western Zone's net profit, to be calculated and paid each quarter. Mulei later signed a written contract containing the same compensation provisions as the oral agreement, but which also contained a covenant not to compete with Jet for two years after termination of the contract, without geographic restriction.

After Jet failed to make the quarterly bonus payments, Mulei became dissatisfied with Jet's performance under the contract, and, in January 1983, he began to explore the possibility of going to work for another air courier. He discussed leaving Jet and setting up another company with a Kansas air charter operator, who incorporated American Check Transport, Inc., (ACT) in Kansas on February 28, 1983. Mulei also discussed leaving Jet with his fellow employees. On March 10, after his supervisor learned of his activities, Mulei was fired.

Within days of his discharge, Mulei commenced working for ACT, which became operational immediately after his termination, and solicited Jet's employees to join him. Many of these employees subsequently resigned or were fired by Jet, and went to work for ACT. Mulei also solicited Jet's customers, primarily banks, for ACT, and many became ACT's customers.

Mulei filed suit against Jet, seeking a declaratory judgment that the noncompetition covenant was invalid, and also seeking unpaid compensation and penalty pursuant to § 8–4–104, C.R.S. Jet counterclaimed against Mulei for breach of contract, breach of fiduciary duty, and tortious interference with contractual relations; it also sued Mulei and third-party defendant ACT for civil conspiracy, and sought to enjoin further competition.

Upon trial to the court, it found the noncompetition covenant void as unsupported by consideration and unreasonable in geographic restriction. Jet does not appeal this finding. The court also found that Jet had withheld compensation due Mulei without good-faith legal justification and awarded him $93,740.34 in compensation, plus $46,870.17 as a statutory penalty. The court also awarded Mulei vacation pay, interest, and attorney fees and costs pursuant to § 8–4–114, C.R.S. (1986 Repl.Vol. 3B). Jet's counterclaims and third-party claim were dismissed, and its request for an injunction was denied.

## I.

Jet first contends that the trial court erred in assessing a 50% penalty against it pursuant to § 8–4–104(3), C.R.S., and attorney fees pursuant to § 8–4–114, C.R.S. (1986 Repl.Vol. 3B). We perceive no error.

Jet first argues that Mulei's bonus was not "compensation" under the statute or, alternatively, was a profit-sharing plan exempt from the penalty. However, Jet raises these issues concerning compensation for the first time on appeal, and thus, we decline to consider them. *See Christensen v. Hoover,* 643 P.2d 525 (Colo.1982); *Mohawk Green Apartments v. Kramer,* 709 P.2d 955 (Colo.App.1985).

■ Jet also contends that the trial court erred in imposing the penalty because it had a good-faith legal justification for withholding compensation due Mulei under his contract. We disagree.

Section 8–4–104(3), C.R.S., then in effect, provided:

"If an employer refuses to pay wages or compensation in accordance with subsection (1) of this section upon request by the employee and without a good-faith

legal justification for such refusal, the employer is liable to the employee, in addition to the compensation legally proven to be due, in an amount equal to fifty percent thereof as a penalty for such refusal."

The phrase "without a good-faith legal justification" means "willful" withholding; to impose the statutory penalty, a trial court must find that the employer willfully withheld compensation due and owing the employee. *Beasley v. Mincomp Corp.*, 683 P.2d 370 (Colo.App.1984).

Jet claims that it withheld Mulei's bonus and other wages in good faith because Mulei had breached his contract, and it was therefore entitled to offset its damages against compensation owed. However, the trial court specifically found that Jet had failed to pay Mulei because of its president's "bad memory," and that its withholding was therefore without good-faith legal justification.

The existence of good faith is a question of fact to be determined by the trial court. *Kennedy v. Leo Payne Broadcasting*, 648 P.2d 673 (Colo.App.1982). Because the trial court's finding that Jet lacked good-faith legal justification is supported by evidence in the record, it did not err in imposing the penalty. *See Kennedy v. Leo Payne Broadcasting, supra.*

## II.

Jet next contends that the trial court erred in dismissing its counterclaims against Mulei. Again, we disagree.

## A.

■ Jet's first counterclaim against Mulei alleged that he breached his employment contract by failing to devote his full time and best efforts to Jet's business, and by disclosing confidential information. Jet argues that because of Mulei's involvement in the formation of a rival company, ACT, he failed to devote best efforts to Jet, in breach of his contract.

The trial court found that Mulei, while employed by Jet, continued to operate the Western Zone on a profitable, efficient, and service-oriented basis, and that he continued to solicit business for Jet even during the time he was involved in ACT's formation.

The determination of whether a party has used best efforts in performing a contract is a question for the trier of fact. *See Stone v. Caroselli*, 653 P.2d 754 (Colo.App. 1982). Since the evidence supports the trial court's finding that Mulei had fully performed under the contract, it will not be disturbed on appeal. *See Stone v. Caroselli, supra.* Because there was insufficient evidence to support this counterclaim, it was properly dismissed. *See Willis v. Chase*, 125 Colo. 115, 240 P.2d 912 (1952).

As for the alleged disclosure of confidential information, the court did find that Mulei had disclosed the names of Jet's customers and other aspects of its operation to ACT. However, the court also found that this information was not of a confidential nature because the identities of Jet's bank customers were common knowledge in the industry and easily accessible to its competitors. It further found that Mulei's knowledge of Jet's operations was not the result of confidential information, special training, or trade secrets gained from Jet, but of his own business acumen, for which he was specifically hired.

■ Only confidential information acquired during the course of employment may be protected, not the general knowledge of a business operation. *See Gaye v. Gillis*, 167 F.Supp. 416 (D.Mass.1958); *Anchor Alloys, Inc. v. Non-Ferrous Processing Corp.*, 39 A.D.2d 504, 336 N.Y.S.2d 944 (1972), *appeal denied*, 32 N.Y.2d 612, 299 N.E.2d 899, 346 N.Y.S.2d 1025 (1973). Information already known to competitors or readily ascertainable elsewhere cannot be protected as confidential. *See Suburban Gas of Grand Junction, Inc. v. Bockelman*, 157 Colo. 78, 401 P.2d 268 (1965); *Knoebel Mercantile Co. v. Siders*, 165 Colo. 393, 439 P.2d 355 (1968).

■ Moreover, the general ability and know-how an employee brings into employment, and the skill and experience acquired during it, are not the employer's property;

the right to use and expand these powers remains the employee's. *See GTI Corp. v. Calhoon,* 309 F.Supp. 762 (S.D.Ohio 1969); *Wiebold Studio, Inc. v. Old World Restorations, Inc.,* 19 Ohio App.3d 246, 484 N.E.2d 280 (1985); *cf. Wexler v. Greenberg,* 399 Pa. 569, 160 A.2d 430 (1960).

■ The determination of what constitutes "confidential information" is a question for the trier of fact. *See Porter Industries, Inc. v. Higgins,* 680 P.2d 1339 (Colo.App.1984). Here, the record supports the trial court's finding that none of the information Mulei disclosed was confidential. Therefore, the counterclaim was properly dismissed. *See Porter Industries, Inc. v. Higgins, supra.*

### B.

Jet also contends that, since Mulei breached his duty as an employee by soliciting Jet's customers for his own purposes and by inducing its employees to quit before his own employment was terminated, its counterclaim against Mulei for breach of fiduciary duty of loyalty should not have been dismissed. We disagree.

■ Although an employee is subject to a duty not to compete with his employer, he will not be liable for a breach of that duty unless he causes fellow employees to breach a contract. *Electrolux Corp. v. Lawson,* 654 P.2d 340 (Colo.App.1982). Mere preparation for competition with an employer does not violate an employee's duty of loyalty, *Electrolux Corp. v. Lawson, supra;* nor is this duty breached where the employee does not actually compete. *Kennedy v. Leo Payne Broadcasting, supra.* Where employment contracts are terminable at will, absent wrongful means, there is no liability for inducing a fellow employee to resign. *Electrolux Corp. v. Lawson, supra.*

■ The trial court found that, within the month before he was fired, Mulei had discussed with Jet employees their interest in joining ACT, and, upon his termination, members of Jet's Western Zone staff had resigned and joined ACT. It also found that although he may have caused some of

Jet's employees to resign, because their contracts were terminable at will, he induced no breach of contract. Moreover, the court found that although Mulei had solicited Jet's customers for ACT, ACT had not actually commenced competing with Jet until after Mulei had been fired. On the basis of these findings, the court concluded that Mulei had not violated any duty of loyalty to Jet.

These findings are supported by evidence in the record. Thus, the trial court did not err in dismissing this counterclaim. *See Electrolux Corp. v. Lawson, supra.*

### C.

The trial court also dismissed Jet's counterclaim for tortious interference with contractual relations. On appeal, Jet has characterized this claim as "interference with prospective economic advantage." However, because Jet pleaded and prosecuted the claim as interference with a present contract, we do not address the interference with prospective economic advantage theory issue on appeal. *See Christensen v. Hoover, supra; Mohawk Green Apartments v. Kramer, supra.*

■ Although an action in tort lies for intentional interference with contractual relations, nevertheless, if the contract is terminable at will, there is no legal assurance of future performance; thus, a competitor who intentionally causes a third person not to continue an existing contract terminable at will does not improperly interfere with the contractual relation if no wrongful means are employed. *Memorial Gardens, Inc. v. Olympian Sales & Management Consultants, Inc.,* 690 P.2d 207 (Colo. 1984).

■ Jet argues that, inasmuch as it established that Mulei solicited Jet's customers to cease doing business with Jet and to patronize ACT instead, the trial court erred in dismissing its counterclaim. However, the trial court concluded that any interference was justified by the privilege of lawful competition. Because the record indicates that Jet's contracts with its customers were terminable at will, and because no

evidence of wrongful means was adduced, the trial court did not err in dismissing the counterclaim. *See Electrolux Corp. v. Lawson, supra.*

### III.

Jet further asserts that the trial court erred in finding as a matter of law that neither Mulei nor third-party defendant ACT engaged in a civil conspiracy, and that its claim, therefore, was erroneously dismissed. We disagree.

A civil conspiracy is a combination of two or more persons who, by some concerted action, seek either to accomplish an unlawful purpose or to accomplish some lawful purpose by criminal or unlawful means. *McGlasson v. Barger,* 163 Colo. 438, 431 P.2d 778 (1967). However, a party cannot be held liable merely for doing in a proper manner that which it had a lawful right to do. *Contract Maintenance Co. v. Local No. 105,* 160 Colo. 190, 415 P.2d 855 (1966).

The trial court found that neither Mulei nor ACT had committed any overt unlawful act in preparing to compete with Jet and that Mulei and ACT had not engaged in unlawful competition with Jet. Because the record supports these findings, the conspiracy claims against Mulei and ACT were properly dismissed. *See Contract Maintenance Co. v. Local No. 105, supra; Electrolux Corp. v. Lawson, supra.*

### IV.

Finally, Jet argues that the trial court erred in calculating the amount of the bonus it owed Mulei and, consequently, the amount of the statutory penalty. It contends that the evidence does not support either the calculation of the bonus on an accrual basis of accounting or the inclusion of air freight revenues in the Western Zone net profit. Once again, we disagree.

Much of the difficulty that arose in calculating Mulei's bonus resulted from Jet's inconsistent accounting system, which mixed accrual with cash methods. Mulei's accounting expert testified that he used basic accounting principles to match expenses to revenues as required by Mulei's contract. Based on this method, the expert determined the amount of bonus owed to Mulei, a figure which the trial court accepted.

The credibility of expert witnesses is within the province of the trial court as the trier of fact, and its treatment thereof will not be disturbed on review unless clearly erroneous. *Cottonwood Hill, Inc. v. Ansay,* 709 P.2d 62 (Colo.App.1985).

Here, the expert's opinion was within his specialized field of knowledge, *see* CRE 702, and was based on generally accepted accounting principles. *See* CRE 703. He also concluded that the result would be the same under either the cash or accrual methods. The evidence supports the trial court's acceptance of his opinion, and hence, its failure to conform to Jet's accounting method was not error.

Mulei's contract did not specifically exclude air freight revenues from the amount from which the bonus was to be calculated. Jet attributed its entire air freight revenues to its Cincinatti operation, while allocating some air freight expenses to its Western Zone operation. Some air freight revenue was thus attributable to the Western Zone, although the exact amount was disputed. Since the evidence was conflicting and the figure arrived at by the court is supported by competent evidence in the record, it will not be disturbed on review. *Flight Systems, Inc. v. Elgood-Mayo Corp.,* 660 P.2d 909 (Colo.App.1982).

Jet's contention that the conclusions of Mulei's accounting expert are unsupported by the evidence is without merit.

Judgment affirmed.

SMITH and TURSI, JJ., concur.