No. 20827.

SUBURBAN GAS OF GRAND JUNCTION, INC. *v.*
HERB BOCKELMAN AND CASH GAS CO., INC.
(401 P.2d 268)

Decided April 19, 1965. Rehearing denied May 10, 1965.

HELMAN, YOUNGE, HOCKENSMITH & STACEY, for plaintiff in error.

FELIX D. LEPORE, for defendants in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THIS is an unfair competition case.

Plaintiff in error seeks reversal of the judgment of the trial court which denied a temporary injunction against defendants in error and which dismissed its complaint. We shall refer to plaintiff in error as Suburban, to defendant in error, Herb Bockelman, as Bockelman, and to defendant in error, Cash Gas Co., Inc., as Cash Gas.

The record discloses that Bockelman, a propane gas route salesman for 14 years in the Grand Junction, Colorado area, was an employee of Suburban for approximately three years prior to his employment with Cash Gas. Prior to that time he had worked for two other local concerns, each of which had been bought up by Suburban. Apparently, each time that Bockelman changed employment in the past, he took some of his former customers with him to his new company. Suburban let Bockelman out due to a reduction in force and shortly thereafter in 1963 he went to work for Cash Gas. Soon thereafter, Suburban began to notice a loss of its customers. By the time of the hearing which involved Suburban's attempt to temporarily enjoin Bock-

elman and Cash Gas from soliciting its accounts, the loss amounted to about 60 accounts, or 20% of its business.

The evidence is that Bockelman had no written contract not to compete with Suburban after leaving its employment, and that he did not physically remove or possess any books or records of his former employer when his employment was terminated. The complaint, however, is that he had through usage and time memorized his route customers, their financial standing as customers and was able to tell about when they would need new supplies of propane. It is alleged that he used such information to urge them to change to Cash Gas as their new supplier.

Admittedly, the price of propane gas and the size of the tanks were the same among the three local competing companies. According to Suburban's manager, it was *service* rendered by the route salesman that made the principal difference as to which company the customers would patronize. It was agreed that Bockelman had rendered excellent service, was well known and did extra repairs and services for his customers. In regard to service, Suburban's manager testified in pertinent part:

"* * * The things it takes to get a new account, you have to offer something the customer feels is better than what he's getting and if he's getting proper service from the company he's dealing with, the chances of taking that customer are pretty slim."

Suburban, both in the trial court and on this writ of error, urged that Bockelman's knowledge of its customers gained while employed with it, is confidential; and though it does not seek to enjoin competition, it does seek to enjoin "unfair competition" as it labels Bockelman's activities.

■ We agree with the trial court's refusal to grant a temporary injunction in the instant case recognizing, however, that there is some difference of opinion among the authorities on the principle involved; many of these being gathered in 23 A.L.R. 423 and 126 A.L.R. 768.

Here the evidence is both that *service* rendered by the route salesman is important and that propane gas tanks are usually visible to anyone who visits in the rural or suburban areas. Except for testimony which indicates that door to door soliciting is not done often as being too impractical in sparsely settled areas, evidently anyone could find and contact not only Suburban's gas users but also customers of other firms if they so desired. The trial court found, and the evidence supports its findings, that:

"There is no evidence that Bockelman has taken any list or record belonging to plaintiff. That credit information on customers was known to him [Bockelman] from plaintiff's books does not establish that such information was not obtainable readily from other sources, nor does it appear that this information had anything to do with these sales.

"\* \* \* The evidence here indicates that most of these customers seem to consider themselves as attached to the route salesman rather than to the employer."

 In our view, such information as Bockelman had was not obtained by fraud and was not confidential or a trade secret. We feel the better rule in such a case is the one set forth in *Spring Steels, Inc., v. Molloy,* 400 Pa. 354, 162 A.2d 370 (1960) where the court quoting from *Wiegand Co. v. Harold E. Trent Co.,* 122 F.2d 920, 924 (1941) stated:

" 'The rule is quite clear that the solicitation of customers and use of customer lists is permissible unless there is a breach of an express contract or violation of some confidence. *There must be some element of fraud or trade secrecy involved* \* \* \* But equity is not protecting mere names and addresses easily ascertainable by observation or by reference to directories.' (Emphasis supplied.)"

A similar view was expressed by the court in *American Window Cleaning Co. of Springfield v. Cohen,* 343 Mass. 195, 178 N.E.2d 5 (1961) where it was said:

"That Cohen was a director did not make information, otherwise properly acquired, confidential. It was in his employee capacity that Cohen acquired the information about customers. The information was of the kind which would be used by anyone working for his living in the window cleaning business — one in which Cohen was experienced and free to work."

The judgment is affirmed.

MR. JUSTICE McWILLIAMS not participating.