MANAGEMENT RECRUITERS OF BOULDER, INC., Plaintiff–Appellee and Cross–Appellant,

v.

Donald E. MILLER, Defendant–Appellant and Cross–Appellee.

No. 86CA1783.

Colorado Court of Appeals, Div. IV.

Sept. 1, 1988.

Chrisman, Bynum & Johnson, Robert L. Matthews, Boulder, for plaintiff-appellee and cross-appellant.

Martin & Mehaffy, Richard A. Tharp, Jeffrey L. Skovron, Boulder, for defendant-appellant and cross-appellee.

NEY, Judge.

Defendant, Donald E. Miller, appeals the judgment, entered after a trial to the court, in favor of plaintiff based on the violation of a noncompetition clause in an employment contract. Plaintiff, Management Recruiters of Boulder, Inc. (Recruiters), cross-appeals the trial court's calculation of damages. We affirm in part, reverse in part, and remand for recalculation of damages.

Recruiters is a recruitment agency which fills job orders from employer-clients with qualified "candidates." Recruiters continually compiles "candidate" information such as job qualifications and employment histories to have a ready source from which to match "employer-clients" needs with "candidates."

Miller was employed by Recruiters as an account executive pursuant to an employment contract which contained several noncompetition covenants. Most of the covenants were general in nature, and included blanket prohibitions on Miller's right to compete. There was also a more specific provision, now at issue, which stated:

"[F]or a period of one (1) year following the effective date of termination of this Agreement, the Account Executive;

. . . .

"B) shall not contact, in any manner whatsoever, in the course of the search and recruiting business wheresoever said business is situated, any candidate or employer-client with whom the Account Executive had contact with or access to during the twelve (12) months immediately preceding the effective date of termination of this Agreement...."

Miller left Recruiters' employ and organized his own recruitment agency in competition with Recruiters. A total of nine placements were made by Miller, involving either "candidates" or "employer-clients" with whom Miller had contact while in Recruiters' employ. Recruiters brought this action seeking injunctive relief and damages.

The trial court held that § 8–2–113(2), C.R.S. (1986 Repl.Vol. 3B) voided the general noncompetition covenants of the employment agreement, but it ruled that the provision set out above was separable from the invalid portions of the agreement since it protected trade secrets. The trial court ruled that the information on "candidates," but not "employer-clients", was a trade secret. Thus, the noncompetition provision protecting "candidates" was valid and the trial court held that Miller had breached this provision. Recruiters was awarded damages pursuant to a liquidated damages clause for those placements of "candidates" with whom Miller had contact while employed by Recruiters. However, no damages were awarded for those placements concerning "employer-clients" which the court found not to constitute trade secrets.

I.

Based on its assertion that Miller, by opening his own agency, was self-employed, and therefore not performing services for "any employer," Recruiters first contends that the trial court erred in ruling that § 8–2–113(2), C.R.S. (1986 Repl.Vol. 3B) applies to the contract at issue. We disagree.

Section 8–2–113(2), C.R.S. (1986 Repl.Vol. 3B) provides in pertinent part that:

"Any covenant not to compete which restricts the *right* of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void, but this subsection (2) shall not apply to:

. . . .

(b) Any contract for the protection of trade secrets.

. . . .

(d) Executive and management personnel and officers and employees who constitute professional staff to executive and management personnel." (emphasis added)

■ By this provision, a covenant which restricts the *right* of a person to receive compensation for work performed for any employer is void *ab initio* unless it fits into one of the statutory exceptions. Hence, such a covenant not to compete is facially void, rather than voidable, and whether a party to such covenant eventually works for another employer or works for himself is irrelevant.

Here, the general restrictive covenants, properly invalidated by the trial court, would have had the effect of restricting Miller from working for another employer in the recruitment business. Therefore, the trial court properly applied the statute in declaring those general clauses which restricted Miller's right to work for a competing employer void *ab initio.*

## II.

Recruiters next contends that the trial court erred in ruling the restrictive covenants invalid because the exception concerning executive and management personnel should be applied to exempt Miller's position as an account executive and office manager from the purview of the statutory prohibition. We disagree.

■ The determination of whether an employee is executive or management personnel, or professional staff, is a question of fact for the trial court. *Porter Industries, Inc. v. Higgins,* 680 P.2d 1339 (Colo. App.1984).

■ Here, the record supports the trial court's finding that "account executives" were primarily information gatherers and, thus, not within the exception. In addition, because the agreement was not modified when Miller took over as office manager, it is clear that the restrictive covenants were not predicated on the position Miller held. Finally, there is support for the finding that the office manager had no more access

to secret information than the account executives. Because the trial court's finding of fact was supported by substantial evidence, it will not be disturbed. *See Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

## III.

Miller alleges that the trial court erred in characterizing the "candidate" information as a trade secret. We disagree.

*Restatement of Torts* § 757 comment b (1939) defines trade secrets as follows:

"A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."

■ The trial court applied the six part test approved in *Porter Industries, Inc. v. Higgins, supra,* in determining that the candidate information constituted trade secrets. Because the determination of a trade secret is a question of fact and is here supported by substantial evidence, we will not disturb the trial court's finding. *See Mulei v. Jet Courier Service, Inc.,* 739 P.2d 889 (Colo.App.1987).

## IV.

Miller further contends that even if the "candidate" information was entitled to trade secret protection, the restrictive provision is unenforceable because it is not narrowly drawn. We disagree.

■ A noncompetition clause designed to protect trade secrets must be narrowly drafted to fit into the statutory exception provided in § 8–2–113(2)(b), C.R.S. (1986 Repl.Vol. 3B). *Colorado Accounting Machines, Inc. v. Mergenthaler,* 44 Colo.App. 155, 609 P.2d 1125 (1980).

It is true that the restrictive covenant, as written, could be interpreted very broadly. The covenant could be construed to prohibit Miller from contacting *any* "candidate" or *any* "employer-client" with whom he had contact or *access to* during his final 12 months in Recruiters' employ. Such a construction would prohibit Miller from con-

tacting any of the approximately 10,000 "candidates" and "employer-clients" listed in Recruiters' files. However, the trial court construed the covenant so that Miller was only prohibited from contacting any "*candidate*" with whom Miller had *actual* contact during the preceding 12 months.

In determining whether a noncompetition covenant fits within the "trade secrets exception" of § 8–2–113(2), C.R.S. (1986 Repl.Vol. 3B), we adopt the two-prong test stated in *Gulick v. A. Robert Strawn & Associates, Inc.*, 477 P.2d 489 (Colo.App.1970) (not selected for official publication). Although that case was decided prior to the enactment of § 8–2–113(2), C.R.S. (1986 Repl.Vol. 3B), the reasoning is sound, and thus, it may be applied to cases affected by the statute.

The trial court must first examine the factual situation to determine whether a restrictive covenant is justified at all. Here, the trial court found the candidate information to constitute a trade secret, and held that the restrictive provision was necessary to safeguard Recruiters' business.

The trial court must then examine the specific terms of the noncompetition clause to determine the reasonableness of their effect. Here, the court narrowly construed the restrictive covenant to insure that the restrictions were limited to protecting trade secrets. *See Whittenberg v. Williams*, 110 Colo. 418, 135 P.2d 228 (1943); *Gulick v. A. Robert Strawn and Associates, Inc., supra.*

We hold that the one year restriction which prohibited Miller from contacting any "candidate" with whom he had actual contact during his final year in Recruiters' employ was tailored to prevent the misappropriation of trade secrets by Miller. Thus, the covenant was a permissible restriction under § 8–2–113(2)(b), C.R.S. (1986 Repl.Vol. 3B).

### V.

Miller also asserts that the liquidated damages clause which provided that any fees earned by Miller as a result of a violation would determine the damages due Management, was actually a penalty and therefore unenforceable. We disagree.

The trial court found that potential damages were difficult to ascertain at the time of contracting, the parties intended to liquidate damages, and that the liquidated provision was designed to provide a reasonable estimate of damages which was not greatly disproportionate to the probable or presumed loss resulting from contacts with Recruiters' candidates. These findings satisfy the three pronged test established by our supreme court in *Perino v. Jarvis*, 135 Colo. 393, 312 P.2d 108 (1957). Because there is ample evidence in the record to support the trial court's findings, they will not be disturbed. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

### VI.

Miller also asserts that the trial court incorrectly found that Mike Toombs was a "candidate"; and therefore, no damages should be awarded to Recruiters for his contact with Toombs. We agree.

There is no evidence that Toombs was ever a candidate of Recruiters. The only evidence concerning Toombs was that his name was listed on an "employer-client" card. Because the trial court found that "employer-client" information was not entitled to trade secret protection, Recruiters cannot recover for Miller's contact with Toombs. Therefore, the $8,120 awarded for contact with Toombs was error.

Finally, Recruiters contends that the trial court failed to include two placements in its calculation of damages. We disagree.

The two placements made by Miller concerned companies that were included in Recruiters' "employer-client" listings. Since the trial court correctly ruled that the "employer-client" listings were not entitled to trade secret protection, Recruiters could not enforce the noncompetition provision regarding these placements.

The judgment is affirmed in all respects except as to the award of damages for the contact with Toombs. That portion of the

judgment is reversed, and the cause is remanded to the trial court for recalculation of the damage award.

BABCOCK and HUME, JJ., concur.