**COLORADO SUPPLY COMPANY, INC., a Colorado corporation, Plaintiff–Appellant,**

v.

**David STEWART, and Aspen Maintenance Supply, Inc., a Colorado corporation, Defendants–Appellees.**

No. 89CA0989.

Colorado Court of Appeals, Div. III.

Aug. 30, 1990.

**1304**

Robert T. Bettenberg, Wheat Ridge, for plaintiff-appellant.

Poland & Wheeler, Scott Poland, Lakewood, for defendant-appellee David Stewart.

Oates, Hughes & Knezevich, P.C., John M. Ely, Aspen, for defendant-appellee Aspen Maintenance Supply, Inc.

Opinion by Judge DUBOFSKY.

Plaintiff, Colorado Supply, Inc., appeals the judgment dismissing plaintiff's claims for breach of contract, misappropriation of trade secrets, and injunctive relief against defendant David Stewart and claims for misappropriation of trade secrets and injunctive relief against defendant Aspen Maintenance Supply, Inc. Plaintiff also appeals the judgment granting attorney fees to Aspen. We affirm in part and reverse in part.

Prior to January 1988, Stewart worked as a sales representative for plaintiff pursuant to a series of written agreements. The parties stipulated that Stewart was an independent contractor, rather than an employee of plaintiff.

In January 1988, Stewart notified plaintiff that he would no longer be working for it. Stewart then began employment with Aspen, a competitor of plaintiff, as a sales representative. His sales territory partially overlapped the territory that he had previously worked for plaintiff.

## I.

◼ Plaintiff first argues that the trial court erred in its determination that a covenant not to compete in Stewart's sales representative agreements with plaintiff was void. We disagree.

Section 8–2–113(2), C.R.S. (1986 Repl.Vol. 3B) provides:

"Any covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void, but this subsection (2) shall not apply to:

"(a) Any contract for the purchase and sale of a business or the assets of a business;

"(b) Any contract for the protection of trade secrets;

"(c) Any contractual provision providing for recovery of the expense of educating and training an employee who has served an employer for a period of less than two years;

"(d) Executive and management personnel and officers and employees who constitute professional staff to executive and management personnel."

The trial court concluded that none of the four enumerated exceptions applied here. Consequently, it held the noncompetition agreement to be void.

Plaintiff argues on appeal that, since Stewart was an independent contractor, the trial court erred in applying § 8–2–113(2) to his contracts. However, that statute does apply to independent contractors. *See Smith v. Sellers*, 747 P.2d 15 (Colo.App. 1987). Accordingly, the trial court did not err in holding the non-competition covenants in his employment contracts to be void. *See Colorado Accounting Machines, Inc. v. Mergenthaler*, 44 Colo.App. 155, 609 P.2d 1125 (1980).

## II.

Plaintiff next argues that the trial court erred in finding that plaintiff had no trade secrets entitled to protection pursuant to the Colorado Uniform Trade Secrets Act. We disagree.

Plaintiff alleges that under § 7–74–102(4), C.R.S. (1986 Repl.Vol. 3A), its customer lists, price lists, and product formulas qualify as trade secrets. It further alleges that Stewart and Aspen misappropriated these trade secrets.

Section 7–74–102(4) provides:

" 'Trade secret' means the whole or any portion or phase of any scientific or technical information, design, process, procedure, *formula*, improvement, confidential business or financial information, *listing of names*, addresses, or telephone numbers, or other information relating to any business or profession which is *secret and of value*. To be a 'trade secret' the owner thereof must have taken mea-

sures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes." (emphasis added)

■ What constitutes a trade secret is a question of fact for the trial court. *Network Telecommunications, Inc. v. Boor–Crepeau*, 790 P.2d 901 (Colo.App.1990).

Although an exact definition of a trade secret may not be possible, the following factors may be considered in the determination whether a trade secret exists:

"1) the extent to which the information is known outside the business;

"2) the extent to which it is known to those inside the business, *i.e.*, by the employees;

"3) the precautions taken by the holder of the trade secret to guard the secrecy of the information;

"4) the savings effected and the value to the holder in having the information as against competitors;

"5) the amount of effort or money expended in obtaining and developing the information; and

"6) the amount of time and expense it would take for others to acquire and duplicate the information."

*Network Telecommunications, supra.*

■ Furthermore, the alleged secret must be the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Extreme and unduly expensive procedures need not be taken. Reasonable efforts have been held to include advising employees of the existence of a trade secret, limiting access to a trade secret on a "need to know basis," and controlling plant access. *Network Telecommunications, supra.*

■ Here, the trial court concluded that plaintiff's customer lists were not trade secrets because: (1) the information was developed by Stewart, who was an independent contractor, rather than by plaintiff; (2) the names on the list can be obtained fairly easily, by reading through the business section of the telephone directory and by asking prospective customers from

whom they purchase certain products; and (3) there was no exclusivity as to customers, in that customers purchased the products from more than one vendor.

■ As to price lists, the trial court found that: (1) they were published by plaintiff to customers, employees, and independent contractors; (2) there are no fixed prices at which the products are sold; and (3) there was no evidence that Stewart knew plaintiff's costs of the products. Hence, it concluded the price lists were not trade secrets.

■ The evidence demonstrated that the "formulas" were not unique to plaintiff and were versions of formulas from products not created by or unique to the plaintiff.

The trial court also found that the precautions taken to protect all of this information were not those taken to protect trade secrets—they were only normal business precautions. Furthermore, dissemination of this information was not limited to certain employees. Even independent contractors, who were hired as salespersons, were provided the information.

Finally, the trial court determined that there was no misappropriation because there was no improper acquisition of the information and because the sales representative agreements imposed no duty on Stewart regarding disclosure of the information. *See* § 7–74–102, C.R.S. (1986 Repl. Vol. 3A).

These findings are in accord with decisions from other jurisdictions. *See Jet Spray Cooler, Inc. v. Crampton*, 361 Mass. 835, 282 N.E.2d 921 (1972) (customer list held not to be a trade secret because no proper and reasonable steps were taken by the owner to protect the secrecy of the information); *Smith Oil Corp. v. Viking Chemical Co.*, 127 Ill.App.3d 423, 82 Ill. Dec. 250, 468 N.E.2d 797 (1984) (customer information was not a protectable trade secret, but rather general knowledge, where access to the information was not restricted, employees knew customers' names from general experience, and customers commonly dealt with more than one

supplier); *Hayden's Sport Center, Inc. v. Johnson,* 109 Ill.App.3d 1140, 65 Ill.Dec. 612, 441 N.E.2d 927 (1982) (customer list not a trade secret where information could be readily obtained from telephone books and other directories); *Catalogue Service of Westchester, Inc. v. Henry,* 107 A.D.2d 783, 484 N.Y.S.2d 615 (1985) (customer lists are not trade secrets where such customers are readily ascertainable from sources outside the former employer's business); *cf. Sigma Chemical Co. v. Harris,* 794 F.2d 371 (8th Cir.1986) (vendor and product files held to be trade secrets where owner expended great cost and effort over 40 years to develop the files and it would have been difficult for a competitor to duplicate the information).

Since here there is evidence in the record to support the trial court's conclusions, they will not be disturbed on appeal. *See People in Interest of A.J.,* 757 P.2d 1165 (Colo.App.1988).

### III.

The trial court concluded that plaintiff's claim against Aspen for misappropriation of trade secrets was groundless and, therefore, awarded attorney fees pursuant to § 13–17–102, C.R.S. (1987 Repl.Vol. 6A). Plaintiff contends that the trial court erred in making such award, and we agree.

■ A claim or defense is groundless if the allegations in the complaint, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence at trial. *Western United Realty, Inc. v. Isaacs,* 679 P.2d 1063 (Colo.1984). However, a losing position is not necessarily groundless. *Federal Land Bank of Wichita v. Jost,* 761 P.2d 270 (Colo.App.1988). A trial court's determination in this regard is discretionary and will not be disturbed on appeal if the ruling is supported by the evidence. *Haney v. City Court,* 779 P.2d 1312 (Colo.1989).

■ The court here found that no credible evidence was presented that the information at issue constituted trade secrets, as defined in § 7–74–102(4), C.R.S. (1986 Repl.Vol. 3A). The court pointed out that Stewart was an independent contractor, that plaintiff never told Stewart that this information was to be preserved, and that all the information was easily accessible. Hence, the information was not a secret.

The court also found that no credible evidence was presented that the noncompetition agreement was enforceable. It noted that, by its own terms, the contract had terminated by the time Aspen hired Stewart. Additionally, there was no evidence that Aspen had induced Stewart to breach the contract.

■ For several reasons we conclude the trial court improperly awarded attorney fees. First, claims which involve novel questions of law upon which there is no determinative authority in Colorado at the time plaintiff files his complaint cannot supply a basis to award attorney fees. *Montoya v. Bebensee,* 761 P.2d 285 (Colo. App.1988). Here, when this action was at issue in the trial court, there were no Colorado cases construing the Colorado Uniform Trade Secrets Act, which was adopted in July 1986.

Second, plaintiff introduced sufficient evidence to demonstrate that the alleged trade secrets were valuable. Furthermore, both plaintiff's president and another witness testified that they protect their customer lists from disclosure to the public. And, under the proper circumstances, customer lists can qualify as trade secrets. *See Suburban Gas of Grand Junction, Inc. v. Bockelman,* 157 Colo. 78, 401 P.2d 268 (1965); *Network Telecommunications, supra.* Thus, even though plaintiff may not have established a prima facie case with respect to trade secrets, it did present some credible evidence in support thereof.

Third, plaintiff introduced some evidence as to misappropriation of the information. For example, there was testimony that Aspen's president and Stewart used plaintiff's price list in developing a price list for Aspen, and testimony was presented that, after Aspen employed Stewart, it added six new product lines in competition with plaintiff.

▮ A claim is not per se groundless solely because, as here a plaintiff fails to establish a prima facie case if there is some credible evidence to support the claim. Accordingly, we conclude that the trial court abused its discretion in awarding attorney fees against plaintiff.

The judgment is affirmed in all respects except as to the award of attorney fees. That portion of the judgment is reversed.

TURSI and NEY, JJ., concur.