ATMEL CORPORATION, a California corporation, Plaintiff–Appellee,

v.

VITESSE SEMICONDUCTOR CORPORATION, a Delaware corporation; Robert L. West; Patrick H. Jenkins; and Lattie Alejo, Defendants–Appellants.

No. 98CA0586.

Colorado Court of Appeals, Div. I.

Feb. 15, 2001.

Certiorari Denied Sept. 10, 2001.

Holme Roberts & Owen LLP, Richard L. Nagl, Elizabeth A. Gonzalez, Denver, Colorado; Jacobs Chase Frick Kleinkopf & Kelly LLC, John R. Webb, for Plaintiff-Appellee.

Holland & Hart LLP, James E. Hartley, Joseph W. Halpern, Stephen Masciocchi, Lee F. Johnston, Denver, Colorado; Holland & Hart LLP, Edward H. Flitton, III, Colorado Springs, CO, for Defendants-Appellants.

Opinion by Judge METZGER.

Defendants, Vitesse Semiconductor Corporation, Robert L. West, Patrick H. Jenkins, and Lattie Alejo, appeal the preliminary injunction entered in favor of plaintiff, Atmel Corporation. They also appeal the order denying arbitration. We affirm the order, reverse the preliminary injunction to the extent it prohibits the individual defendants from participating in defendant Vitesse's hiring process involving Atmel employees who initiate contact, and to the extent it covers a period longer than the contract term, reverse the order setting Atmel's bond amount, and remand the cause for further proceedings.

Atmel is an established semiconductor company with a manufacturing facility in Colorado Springs that employs over 2,200 persons, constituting over two-thirds of the semiconductor labor force in that area. Vitesse, also a semiconductor company, recently built a manufacturing facility and began to hire employees. Many of its new employees had previously worked at Atmel, including defendants West, Jenkins, and Alejo. Although these companies do not compete in terms of their products or customer base, they do compete for employees in an extremely tight labor market.

When defendants West, Jenkins, and Alejo were hired at Atmel, they were required to sign an employment agreement that contained a "non-solicitation clause" pertaining to Atmel employees. After these defendants left Atmel's employment to work for defendant Vitesse as managers, they assisted in defendant Vitesse's efforts to hire qualified employees.

Contending defendants were "raiding" its work force, on November 24, 1997, Atmel filed this action and sought a temporary restraining order (TRO). Atmel's complaint listed the following claims for relief: misappropriation of trade secrets, unfair competition/misappropriation of business value, breach of fiduciary duty, breach of agreements, interference with contractual employment relationships, interference with agreements, conspiracy to induce breach of contract, intentional interference with prospective economic advantage, and unjust enrichment. Two weeks later, the trial court entered a TRO that prohibited the individual defendants from using Atmel's "confidential information" and from soliciting, recruiting, or attempting to persuade Atmel's current employees to leave their employment.

Later, after a four-day hearing, the trial court granted Atmel a preliminary injunction that was to remain in effect until March 5, 1999. That injunction forbade the individual defendants from soliciting Atmel's employees to apply for employment at Vitesse, screening resumes, conducting interviews, participating in hiring decisions, or making employment offers. These activities were prohibited even if employees of Atmel first initiated contact.

## I.

Defendants contend the trial court erred in broadly interpreting the non-solicitation clauses so as to preclude the individual defendants' participation in any aspect of Vitesse's hiring process involving Atmel employees. We agree.

■ The purpose of a preliminary injunction is to prevent a tort or wrong and to preserve the status quo until final hearing and a determination of the controverted rights of the parties. The grant or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy, and the court should not attempt to do what can be done only after a full hearing and final decree. *Litinsky v. Querard*, 683 P.2d 816 (Colo.App.1984).

■ Injunctive relief should not be indiscriminately granted but should be exercised sparingly and cautiously and with a full conviction on the part of the trial court of its urgent necessity. The trial court must find that the moving party has demonstrated:

(1) a reasonable probability of success on the merits; (2) a danger of real, immediate, and irreparable injury which may be prevented by injunctive relief; (3) that there is no plain, speedy, and adequate remedy at law; (4) that the granting of a preliminary injunction will not disserve the public interest; (5) that the balance of equities favors the injunction; and (6) that the injunction will preserve the status quo pending a trial on the merits.

Unless all of these criteria are met, injunctive relief is not available. *Rathke v. MacFarlane*, 648 P.2d 648, 653–654 (Colo. 1982) (citations omitted).

Defendants argue that issuance of the preliminary injunction was error. They contend that, if the non-solicitation clauses were interpreted correctly, based on settled principles of contract construction and the evidence in the record, they would prohibit only the initiation of contacts with Atmel's employees. We agree.

■ A contract must be interpreted in accordance with the plain meaning of its terms, *Wota v. Blue Cross & Blue Shield*, 831 P.2d 1307 (Colo.1992), considering the circumstances that render it intelligible. *Lorenzen v. Mustard's Last Stand, Inc.*, 196 Colo. 265, 586 P.2d 12 (1978). A contract must always be interpreted in light of the intentions of the contracting parties. *Cache National Bank v. Lusher*, 882 P.2d 952 (Colo.1994).

■ If a contract term is susceptible of more than one meaning, it is ambiguous. *Browder v. United States Fidelity & Guaranty Co.*, 893 P.2d 132 (Colo.1995).

■ To clarify ambiguity in a contract, the court may look to extrinsic evidence, including evidence of industry custom. *See USI Properties East, Inc. v. Simpson*, 938 P.2d 168 (Colo.1997). Even if a contract term is not ambiguous, evidence of industry standards may be used to demonstrate the

parties' intent. *Benham v. Pryke,* 744 P.2d 67 (Colo.1987). The determination whether a contract is ambiguous is a question of law; thus, our review is *de novo. Fibreglas Fabricators, Inc. v. Kylberg,* 799 P.2d 371 (Colo. 1990).

■ Here, the non-solicitation clauses in the individual defendants' contracts with Atmel provided: "Solicitation of Employees. I agree that I shall not for a period of one year following the termination of my relationship with the Company ... either directly or indirectly ... solicit, recruit or attempt to persuade any person to terminate such person's employment with the Company ...."

We hold the trial court's interpretation of the non-solicitation clauses was erroneous and, thus, cannot stand.

First, the uncontroverted evidence established that the custom in the semiconductor industry is to interpret non-solicitation covenants to prohibit only solicitation. Two witnesses with extensive experience in the high technology industry (18 and 25 years, respectively) testified that they knew of no instance in that industry in which such a clause had been interpreted to preclude a former employee from having any involvement at all in his or her new employer's hiring process.

■ Second, recitals and titles may have material influence on the construction of the contract and the determination of the parties' intent. *Las Animas Consolidated Canal Co. v. Hinderlider,* 100 Colo. 508, 68 P.2d 564 (1937). Here, the titles of the clauses lend support to a restrictive interpretation. The clause in defendant Jenkins' contract is entitled "Non–Solicitation of Company Employees," and those in West's and Alejo's contracts are entitled "Solicitation of Employees." This choice of words supports a narrow construction, especially in light of the principle that, if any uncertainty exists in a contract prepared exclusively by an employer, as here, the contract should be construed against the employer. *Kuta v. Joint District No. 50(J),* 799 P.2d 379 (Colo.1990); *Hamilton v. Stockton Unified School District,* 245 Cal.App.2d 944, 54 Cal.Rptr. 463 (5th Dist.1966).

The selection of the sole term "solicitation" for all the contracts at issue establishes the framework of and context for the clauses. Thus, use of the other disputed terms, "directly or indirectly ... solicit, recruit or attempt to persuade," must be read in light of the titles of the clauses and in favor of the employees. *See Kuta v. Joint District No. 50(J), supra.*

"Solicit" means to approach with a request or plea. *Webster's Third New International Dictionary* 2169 (1986). "Recruit" means to "hire or otherwise obtain to provide services ... secure the services of." *Webster's Third New International Dictionary* 1899 (1986). "Persuade" means to induce by argument, entreaty, or expostulation into some mental position. *Webster's Third New International Dictionary* 1687 (1986).

These definitions all imply actively initiated contact. Yet the terms of the preliminary injunction, which prohibit the individual defendants from any participation in the hiring process, are much more expansive.

Atmel argues that, because the non-solicitation clauses prohibited the individual defendants from engaging in the listed activities "directly or indirectly," the preliminary injunction is not overbroad. We disagree.

In the first place, because Atmel, as employer, drafted the non-solicitation clauses, construction and application of the term "indirectly" must be narrow. *See Kuta v. Joint District No. 50(J), supra.* To that extent, the preclusion of any and all participation in the hiring process is too expansive a remedy.

■ Moreover, a contract should never be interpreted to yield an absurd result. *See Sunshine v. M.R. Mansfield Realty, Inc.,* 195 Colo. 95, 575 P.2d 847 (1978). Prohibiting any indirect participation in hiring precludes the individual defendants from making any favorable comment about their employment at Vitesse to anyone who might convey that remark to an Atmel employee. As the trial court itself recognized, this could transform an innocent statement to a relative who is an Atmel employee, that work at Vitesse is enjoyable, into a violation of the preliminary injunction.

Consequently, because the well-established principles of contract interpretation, considered in light of the industry's custom and practices, the language used by the drafter, and the necessity for a sensible result require that the non-solicitation clause be interpreted narrowly, the trial court's broad interpretation in its preliminary injunction cannot stand.

■ This conclusion is bolstered by the fact that, if the non-solicitation clauses were interpreted as broadly as the preliminary injunction provides, they would be void as violative of the Colorado and California statutes that prohibit agreements in restraint of trade.

Defendants West and Alejo's employment agreements provided that California law applied. The relevant section of that law, Cal. Bus. & Prof.Code § 16600 (2000), states:

Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade or business of any kind is to that extent void.

In *Loral Corp. v. Moyes,* 174 Cal.App.3d 268, 219 Cal.Rptr. 836 (6th Dist.1985), a division of the California Court of Appeal construed a non-interference provision in an employment agreement. The defendant had agreed not to solicit former co-workers to leave their employer, and further agreed that he would not disrupt, damage, impair, or interfere with his former employer's business or raid its employees. The court held that the provision was not void on its face under § 16600, so long as the provision was interpreted only to prohibit the defendant from initiating contact with his former co-employees. The court explained:

This restriction only slightly affects [employees of defendant's former employer]. They are not hampered from seeking employment with [the new employer] nor from contacting [defendant]. All they lose is the option of being contacted by him first. It does not restrain them from being employed by [the new employer]. Equity will not enjoin a former employee from receiving and considering applications from employees of his former employer, even though the circumstances be such

that he should be enjoined from soliciting their applications.

*Loral Corp. v. Moyes, supra,* 174 Cal.App.3d at 280, 219 Cal.Rptr. at 844.

In our view, that decision is dispositive as to defendants West and Alejo. Thus, the non-solicitation clause is void and unenforceable to the extent it can be interpreted to prohibit those defendants from doing anything other than initiating contacts with Atmel's employees.

As to defendant Jenkins, Colorado law applies.

Section 8–2–113(2), C.R.S.2000 provides: "Any covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void...."

The reasoning of *Loral Corp. v. Moyes, supra,* applies with equal force to the non-solicitation clause in Jenkins' agreement. Indeed, to interpret the clause otherwise would have the effect of restricting Jenkins from working for his current employer. We cannot interpret the agreement so as to reach such an absurd result. *Cf. Management Recruiters of Boulder, Inc. v. Miller,* 762 P.2d 763 (Colo.App.1988).

We also disagree with Atmel's assertion that the "management personnel" exception to these statutes renders the non-solicitation clauses valid.

The California statute, § 16600, has no executive/manager exception. Thus, this argument has no force as it pertains to defendants West and Alejo.

As it pertains to defendant Jenkins' contract, § 8–2–113(2)(d), C.R.S.2000, excepts "Executive and management personnel and officers and employees who constitute professional staff to executive and management personnel."

■ This management personnel exception applies to those employees who are "in charge" of the business and who act in an unsupervised manner. *See Porter Industries, Inc. v. Higgins,* 680 P.2d 1339 (Colo. App.1984); *see also Management Recruiters of Boulder, Inc. v. Miller, supra.*

■ Here, the trial court found that the individual defendants were all employees at a "management level" during their tenures at Atmel. However, the uncontroverted evidence established that during defendant Jenkins' last two years of employment at Atmel, he was a "technical liaison," and that not only did he not supervise or manage anyone, he had three levels of management employees above him.

Thus, the trial court's finding that defendant Jenkins occupied a management position at Atmel is unsupported by the record. Accordingly, the management personnel exception in § 8–2–113(2)(d) cannot apply to him.

We also disagree with Atmel's assertion that the trade secret exception renders the non-solicitation clause valid.

■ Atmel specifically argues that the ranking system it uses to evaluate its employees' performance is a trade secret. Under this system, Atmel's managers meet and rank the performance of the employees in their departments on a scale of 1–4. The rankings are treated as confidential, are kept under lock and key, and are not disclosed to the employees being ranked.

In Colorado, a trade secret is "the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value." Section 7–74–102(4), C.R.S.2000. California's trade secret exception is based in common law and contains essentially the same elements as Colorado's. *Moss, Adams & Co. v. Shilling,* 179 Cal.App.3d 124, 224 Cal.Rptr. 456 (1st Dist.1986).

The trial court made no specific finding that Atmel's employee ranking information was a trade secret according to the six factors set out in *Porter Industries, Inc. v. Higgins, supra,* 680 P.2d at 1341 (quoting *Southwestern Bell Telephone Co. v. State Corporation Commission,* 6 Kan.App.2d 444, 448, 629 P.2d 1174, 1178 (1981)), as follows:

An exact definition of a trade secret may not be possible, but factors to be considered in recognizing a trade secret are: (1) the extent to which the information is known outside the business, (2) the extent to which it is known to those inside the business, *i.e.,* by the employees, (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information, (4) the savings effected and the value to the holder in having the information as against competitors, (5) the amount of effort or money expended in obtaining and developing the information, and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

The court's only finding was that the employee ranking information was "confidential information." However, because information subject to arguably normal business precautions does not necessarily constitute a trade secret, *see Colorado Supply Co. v. Stewart,* 797 P.2d 1303 (Colo.App.1990), this finding was insufficient to invoke application of the trade secret exception.

Atmel has not provided any authority, nor have we found any, to meet its burden to establish that the employee ranking information is a trade secret. Furthermore, the record contains little, if any, evidence favorable to Atmel regarding the factors necessary to establish the existence of a trade secret. *See Porter Industries, Inc. v. Higgins, supra.*

■ More importantly, in general, an employee's skills, aptitude, and experiences belong to the employee and not to the employer. *Mulei v. Jet Courier Service, Inc.,* 739 P.2d 889 (Colo.App.1987), *rev'd on other grounds,* 771 P.2d 486 (Colo.1989); *see also Suburban Gas of Grand Junction, Inc. v. Bockelman,* 157 Colo. 78, 401 P.2d 268 (1965). No court has held, to our knowledge, that an employee's subjective opinions about his or her co-workers are trade secrets belonging to the employer. And, it is clear that the individual defendants here neither misappropriated nor disclosed any of the employee ranking information.

Therefore, because it finds no support in either the facts or the law, to the extent the

preliminary injunction can be construed as a determination that the trade secret exception applied, it was erroneous.

Consequently, to the extent the preliminary injunction prohibited the individual defendants from participating in defendant Vitesse's hiring practices concerning Atmel employees who initiated contact, it is overbroad and cannot stand. Thus, the first criterion for issuance of a preliminary injunction, a reasonable probability of success on the merits, has not been met.

Accordingly, since all the necessary criteria were not established, entry of the preliminary injunction to that extent was error, *see Rathke v. MacFarlane, supra,* and defendant Vitesse is entitled to damages and attorney fees. *See State v. Zahourek,* 935 P.2d 74 (Colo.App.1996); *see also Lazy Dog Ranch v. Telluray Ranch Corp.,* 948 P.2d 74 (Colo.App.1997), *rev'd on other grounds,* 965 P.2d 1229 (Colo.1998).

## II.

Defendants also contend the trial court erred in extending the duration of the preliminary injunction beyond the one-year term specified in the employment agreements. We agree.

A trial court abuses its discretion when it inappropriately applies a legal standard. *American Television & Communications Corp. v. Manning,* 651 P.2d 440 (Colo.App.1982).

The purpose of an injunction is to prevent "future harm," not to penalize a defendant for alleged past unauthorized actions. *Graham v. Hoyl,* 157 Colo. 338, 402 P.2d 604 (1965). Harm that has already occurred cannot be remedied by an injunction. *American Television & Communications Corp. v. Manning, supra.* Injunctive relief based on a restrictive employment agreement must be co-extensive with the terms of the contract. *Wagner v. A & B Personnel Systems, Ltd.,* 473 P.2d 179 (Colo.App.1970)(not selected for official publication); *Gulick v. A. Robert Strawn & Associates, Inc.,* 477 P.2d 489 (Colo.App.1970)(not selected for official publication).

When the trial court granted the preliminary injunction on March 5, 1998, the non-solicitation covenants for defendants West and Jenkins had already expired by their terms on December 30, 1997, and February 14, 1998, respectively. Defendant Alejo's non-solicitation covenant would expire on November 7, 1998.

In ordering that a one-year injunction would run until March 5, 1999, the trial court stated:

> What the Court is doing as a matter of equity is starting the one year from today. That's the reason for the preliminary injunction. The reason I'm perfectly comfortable with doing that, we know because we heard testimony that [defendants] continued to violate the agreement while the TRO is in effect. At least in their minds they have never really been bound by the one year.

The trial court thus attempted to remedy a past alleged wrong with future injunctive relief, and it extended the injunction beyond the terms of the individual defendants' contracts. This was error. *See Graham v. Hoyl, supra; Wagner v. A & B Personnel Systems, Ltd., supra.*

## III.

Defendants next assert the trial court abused its discretion by permitting Atmel to post a bond of only $5,000 for a preliminary injunction lasting one full year. We agree.

C.R.C.P. 65(c) requires the court to order the party seeking injunctive relief to provide security "in such sum as the court deems proper." The amount of security required is discretionary with the court so long as it bears a reasonable relationship to the potential costs and losses occasioned by a preliminary injunction that is later determined to have been improperly granted. *Apache Village, Inc. v. Coleman Co.,* 776 P.2d 1154 (Colo.App.1989).

When it issued its 10–day TRO early in this litigation, the trial court ordered Atmel to post a $5,000 bond. It found that this sum would cover the expenses defendant Vitesse would be forced to incur in having its

human resources personnel fly in from the home office in California to replace the individual defendants for 10 days in the hiring process.

However, there is no evidence in the record to support the trial court's imposition of a $5,000 bond for a preliminary injunction of one year. And, if $5,000 covered only a 10 day period, it would be mathematically impossible, in the absence of any additional evidence, as here, for the same amount to be adequate to cover a term of 365 days. Thus, this decision cannot stand. *See City & County of Denver v. Ameritrust Co.*, 832 P.2d 1054 (Colo.App.1992).

## IV.

Finally, defendants argue the trial court erred by refusing to enforce a valid arbitration clause. We disagree.

The employment agreements of defendants West and Alejo included the following language:

I agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration ... the arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration.

Defendant Jenkins' employment agreement had no arbitration clause.

The trial court ruled that, because not all of Atmel's claims were covered by an arbitration clause, because defendants Jenkins and Vitesse were not subject to arbitration, and because the facts and issues concerning the arbitrable and non-arbitrable claims were intertwined, arbitration would not be ordered.

At the outset, we note that defendants seek to enforce the arbitration clause under Colorado's Uniform Arbitration Act, § 13–22–201, et seq., C.R.S.2000 and not under the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (1994).

In Colorado, when facts and issues are intertwined, as they are here, if some issues require arbitration and others do not, consideration of the interests of judicial economy, time, and expense leads to the conclusion that all the issues should be resolved by litigation. *See Sandefer v. District Court*, 635 P.2d 547 (Colo.1981), *overruled in part on other grounds by Sager v. District Court*, 698 P.2d 250 (Colo.1985). *But see Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)(in proceedings subject to the Federal Arbitration Act, regardless of whether the facts and issues are intertwined, all arbitration claims must go to arbitration and all non-arbitrable claims must go to litigation in order to honor the parties' contract to arbitrate). A court's application of the intertwining doctrine is subject to review on the basis of abuse of discretion. *See City & County of Denver v. District Court*, 939 P.2d 1353 (Colo.1997).

There is sufficient support in the record for the trial court's conclusion. Ordering arbitration would entail an arbitrator and trial court hearing the same evidence, resulting in a duplication of judicial resources and the possibility of inconsistent enforcement. Thus, we find no abuse of discretion in this ruling. *See Sandefer v. District Court, supra.*

The order denying arbitration is affirmed. To the extent it prohibits the individual defendants from participating in defendant Vitesse's hiring process involving Atmel employees who initiate contact, and to the extent it covers a period longer than the contract term, the preliminary injunction is reversed, as is the order setting Atmel's bond amount, and the cause is remanded for further proceedings consistent with this opinion.

DAVIDSON, J., concurs.

CRISWELL *, J., specially concurs.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.2000.

Judge CRISWELL specially concurring.

I agree both with the result and the analysis contained within the majority opinion.

With respect to part IV of that opinion, however, I believe it should be emphasized that the question whether the Federal Arbitration Act, 9 U.S.C. § 1, et seq., is applicable to the contracts at issue in this case has not been raised by any of the parties. Hence, the further question whether, with respect to an arbitration provision contained within a contract to which that statute applies, the state law concept of "intertwining" may be applied to deny enforcement to such a provision, *see Grohn v. Sisters of Charity Health Services,* 960 P.2d 722 (Colo.App. 1998), has likewise not been presented to us, and we have not passed upon either of those questions.